United States District Court
Eastern District of New York

------------------------------------X

Chao Rong Wu and Gan Zhi Feng,

           *Plaintiffs*,           **Memorandum and Order**

   - against -           No. 18-cv-728 (KAM)

C.H. Supermarket, Inc. d/b/a CJ Food
Mart, L.X.W.H.C. Supermarket Inc.
d/b/a CJ Food Mart, CL Supermarket
Inc. d/b/a CJ Food Mart, "Ah-zhen"
(first name unknown) Wu, Xiao-Cheng
Lin, Peng Wu, He Huang, and "John"
(first name unknown) Lin,

           *Defendants*.

------------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

        Pending before the Court is the second motion for default judgment filed by plaintiffs Chao Rong Wu and Gan Zhi Feng (collectively, "Plaintiffs"). (ECF No. 129.) Plaintiffs move for default judgment against four defendants: (i) three corporate defendants (C.H. Supermarket, Inc., L.X.W.H.C. Supermarket Inc., and CL Supermarket Inc. (collectively, "Corporate Defendants")); and (ii) one individual defendant, Xiao-Cheng Lin.[1]

        Before proceeding with the analysis of the instant

---

[1] In this Memorandum and Order, the Court refers to these four defendants (the Corporate Defendants and Xiao-Cheng Lin) collectively as "Defendants." As explained in the next paragraph, *see infra*, Plaintiffs do not seek default judgment against the other named defendants who are therefore dismissed from this action pursuant to Federal Rule of Civil Procedure 41(b).

motion, the Court resolves two outstanding issues as discussed in the Court's July 22, 2025 Order.  (*See* ECF No. 127.)  *First*, because Plaintiffs abandoned claims against individual defendants other than Xiao-Cheng Lin,[2] Plaintiffs' claims against "Ah-zhen" (first name unknown) Wu, Peng Wu, He Huang, and "John" (first name unknown) Lin are DISMISSED WITH PREJUDICE pursuant to Federal Rule of Civil Procedure 41(b).  *Second*, because all defendants have failed to defend this action and show cause why their answers to the Third Amended Complaint should not be stricken, as ordered on July 22, 2025, (ECF No. 127), all defendants' answers to the Third Amended Complaint, (ECF Nos. 103, 113), are STRICKEN.[3]

As explained below, Plaintiffs' second motion for default judgment, (ECF No. 129), is GRANTED as to Claims One, Two, Three, Four, Five, Eight, and Nine.  Claims Six and Seven are DISMISSED for lack of standing.

## BACKGROUND

The Court assumes familiarity with this action, which has been pending for over eight years, primarily due to faulty service of process and defendants' conflicting issues with their

---

[2] In response to this Court's July 22, 2025 order to show cause why Plaintiffs' claims against certain individual defendants should not be dismissed with prejudice for failure to prosecute, (ECF No. 127), Plaintiffs notified the Court in their second motion for default judgment that they "no longer seek default judgment against the other individual defendants" – that is, individual defendants other than Xiao-Cheng Lin.  (ECF No. 129-1 at 6 n.1.)

[3] The now-stricken answers for defendants CL Supermarket Inc. and Xiao-Cheng Lin included crossclaims that were abandoned.  (ECF No. 113 at 11.)

counsels' representation.  Since February 2018, four complaints have been filed in this action.[4]  The operative complaint, the Third Amended Complaint, was filed on November 1, 2022.  (ECF No. 97, Third Amended Complaint ("TAC").)  For the purposes of the instant default judgment motion, the Court assumes as true all of plaintiffs' well-pleaded factual allegations in the operative complaint.  *See City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.") (internal quotations omitted).

## I.    Factual Background

### A.    The Parties

This action arises from employment-related claims by Chao Rong Wu and Gan Zhi Feng ("Plaintiffs") who were employed as meat department employees at a supermarket called "CJ Food Mart" located at 40-33 Main St. Flushing, New York 11354.  (TAC ¶¶ 7-8.) During the relevant employment periods, CJ Food Mart was owned and operated by defendants C.H. Supermarket, Inc., L.X.W.H.C Supermarket Inc., and CL Supermarket, Inc.  (TAC ¶¶ 7-13.) Defendant Xiao-Cheng Lin is an owner of all three corporate

---

[4] The original Complaint was filed on February 1, 2018.  (ECF No. 1, Complaint ("Compl.").)  The First Amended Complaint was filed on April 10, 2018.  (ECF No. 15, First Amended Complaint ("FAC").)  The Second Amended Complaint was filed on July 18, 2018.  (ECF No. 37, Second Amended Complaint ("SAC").)

entities "and makes all business decisions" for the corporations. (TAC ¶¶ 21-26.)

### B.   Factual Allegations

#### 1.   Plaintiff Wu's Employment

Plaintiff Wu was employed at CJ Food Mart from February 1, 2016 to December 11, 2016 and again from February 13, 2017 to January 14, 2018 in the meat department. (*Id.* ¶ 7.) His duties included but were not limited to preparing, moving, organizing, and selling meat products. (*Id.* ¶ 52.)

Defendants paid Plaintiff Wu a fixed wage of $800 per week with a mix of cash and check throughout his employment period. (*Id.* ¶ 54-55.) During this period, Chao Rong Wu worked six days per week. (*Id.* ¶ 53.) He routinely worked 11 hours a day from 7:30 A.M. to 6:30 P.M. without proper breaks or mealtimes. (*Id.*) Plaintiff Wu worked on average 66 hours per week. (*Id.*)

#### 2.   Plaintiff Feng's Employment

Plaintiff Feng was employed at CJ Food Mart from approximately March 1, 2012 to April 15, 2018. (*Id.* ¶ 8.) Like Plaintiff Wu, he also worked in the Defendants' meat department. (*Id.*)

From March 1, 2012 to December 20, 2012, Plaintiff Feng was paid a fixed weekly rate of $230 in cash for 54.5 hours of work.[5] (ECF No. 129-5 at 1.) From January 1, 2013 to May 30,

---

[5] The Court independently calculates Plaintiff Feng's hours based on his

2015, Plaintiff Feng was paid a fixed weekly rate of $435 in cash and checks for 66.5 hours of work.  (*Id.* at 2.)  From June 1, 2015 to December 31, 2017, Plaintiff Feng was paid a fixed weekly rate of $540 in cash and checks for 60 hours of work.  (*Id.*)  From January 2018 to April 15, 2018, Plaintiff Feng was paid a fixed weekly rate of $588 in cash and checks for 52 hours of work.  (*Id.*)

### 3.    Plaintiff Wu's Allegations of Retribution

On February 14, 2018, less than two weeks after Plaintiff Wu filed his initial complaint in this action, Defendants published a group chat message on a Chinese language instant messaging app, WeChat, to numerous Chinese supermarket vendors regarding Plaintiff Wu's lawsuit against Defendants.  (TAC ¶¶ 72-73.)  Defendants stated in the WeChat group message that employers should take notice and reconsider or revoke any offer of employment to Plaintiff Wu because he filed a lawsuit against Defendants.  (*Id.* ¶ 73.)  Plaintiff Wu had been offered employment at a newly-opened supermarket in Flushing, New York as a meat department supervisor, but this offer was rescinded once the owner of that supermarket learned via WeChat about Plaintiff Wu's lawsuit in the instant action.  (*Id.* ¶ 74.)

## II.  Summary of Claims

The table below summarizes Plaintiffs' claims in the

---

affidavit.  (*See* ECF No. 129-5.)  Discrepancies are resolved in favor of Defendants.

operative Third Amended Complaint under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"):

| Plaintiff | Claim | Nature of Claim | Violation Alleged |
|---|---|---|---|
| Feng & Wu | One | Minimum Wage | FLSA |
| Feng & Wu | Two | Minimum Wage | NYLL |
| Feng & Wu | Three | Overtime | FLSA |
| Feng & Wu | Four | Overtime | NYLL |
| Feng & Wu | Five | Spread of Hours Pay | NYLL |
| Feng & Wu | Six | Wage Notice | NYLL |
| Feng & Wu | Seven | Paystub Information | NYLL |
| Wu | Eight | Retaliation | FLSA |
| Wu | Nine | Retaliation | NYLL |

## III. Procedural Background

This action has a lengthy and complex procedural history dating back to 2018. As discussed below, this hybrid collective and class action[6] was originally brought by plaintiffs Wu and Xi

---

[6] Hybrid class and collective actions are proper in employment cases. "Because FLSA and [state law] claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the [state law] claims as a class action under the district court's supplemental jurisdiction." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020) (citation modified).

Jing Chen (who is no longer a plaintiff in this action) and asserted FLSA and NYLL claims.  As discussed earlier, four complaints were ultimately filed, and the operative complaint is the Third Amended Complaint.  (ECF No. 97.)

All defendants filed an answer to the Third Amended Complaint.  (ECF No. 103).  Two defendants later filed an amended answer to the Third Amended Complaint.[7]  (ECF No. 113.)  After counsel for the defendants withdrew, the Court twice ordered the defendants to file submissions to the Court regarding obtaining new counsel, proceeding *pro se*, or otherwise informing the Court how they wished to proceed.  (*See* Docket Orders dated May 9, 2024 and August 18, 2024.)  No defendant complied with the Court's May 9, 2024 and August 18, 2024 orders.  Defendants have ceased defending this action by failing repeatedly to respond to Court orders that they advise the Court regarding new counsel for the corporate defendants and proceeding *pro se* for the individual defendants.  Accordingly, their answers to the Third Amended Complaint, (ECF Nos. 103, 113), are properly stricken.[8]

---

[7] Xiao-Cheng Lin and CL Supermarket Inc. filed a now-stricken amended answer to the Third Amended Complaint that included a cross-claim against all other defendants.  (ECF No. 113.)

[8] Even for *pro se* defendants, "[f]ailure to comply with [relevant] court orders warrants the striking of pleadings and entry of default." *Bratta v. Tramp*, No. 08-cv-4073, 2009 WL 10708936, at *2 (E.D.N.Y. Nov. 30, 2009) (Bianco, J.).  "It is well-settled that courts have certain inherent powers, which must be used with restraint and discretion, and which include the power to strike a defendant's pleadings for failure to obey court orders." *Id.* (cleaned up).  Though "[t]he Court is mindful that *pro se* litigants must be afforded special solicitude," *id.* (internal quotations omitted), "strik[ing] a defendant's

On January 22, 2025, the Court adopted Magistrate Judge Pollak's *sua sponte* Report and Recommendation recommending this Court direct the Clerk to enter default against the defendants.[9] In docket entries dated January 23, 2025 and January 27, 2025, the Clerk of Court entered default against all defendants for failure to defend this action.[10]

On February 21, 2025, Plaintiffs Wu and Feng filed their first motion for default judgment,[11] (ECF No. 124), which the Court denied without prejudice on July 22, 2025, (ECF No. 127). The Court found that Plaintiffs failed to comply with multiple threshold requirements of Local Civil Rule 55.2, specifically, failure to file an affidavit or declaration pursuant to Local Civil Rule 55.2(a)(1)(B), showing compliance with the Servicemembers Civil Relief Act, and Rule 55.2(a)(1)(C), that "the party against whom judgment is sought is not known to be a minor or an incompetent

---

pleadings for failure to obey court orders" is warranted when a "defendant's failure to defend is preventing this action from proceeding to resolution." *Id.*

[9] Local Civil Rule 55.1(b) provides that "[t]he court, on its own initiative, may enter default or direct the clerk to enter default."

[10] Earlier in the history of the case, plaintiffs obtained certificates of default, which were later vacated by stipulation. (ECF No. 39.) On March 20, 2018, the Clerk entered default against defendants C.H. Supermarket, Inc. and L.X.W.H.C. Supermarket Inc. (ECF No. 14.) On June 15, 2018, the Clerk entered default against defendants C.H. Supermarket, Inc., CL Supermarket Inc., He Huang, L.X.W.H.C. Supermarket Inc., "John" (first name unknown) Lin, Xiao-Cheng Lin, "Ah-zhen" (first name unknown) Wu. (ECF No. 35.)

[11] Although the Third Amended Complaint was originally brought as a hybrid class and collective action and certain plaintiffs sought to opt into the action, (*see* ECF No. 112), the only remaining plaintiffs and only movants for default judgment are Plaintiffs Wu and Feng.

person." (*Id.* at 2.)  The Court ordered Plaintiffs to adequately investigate the proper service address for each defendant, review the Local Rules to ensure all procedural defects were cured, and refile their motion by July 30, 2025.  (*Id.* at 4, 18.)

In the same July 22, 2025 Order, the Court directed the Clerk to vacate the entry of default judgment against defendants "John" Lin and "Ah-zhen" Wu and ordered Plaintiffs to show cause why their claims against the those defendants should not be dismissed with prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b) when, "after over seven years of litigation," the Plaintiffs had failed to identify the full names, residential addresses, or any other contact details for those two individuals.  (*Id.* at 4-10.)  Finally, the Court ordered defendants to show cause why their answers to the Third Amended Complaint, (ECF Nos. 103, 113), should not be stricken after failure to comply with the Court's May 9, 2024, and August 18, 2024, orders requiring defendants to file submissions regarding obtaining new counsel, proceeding *pro se*, or otherwise informing the Court how they wished to proceed.  (ECF No. 127 at 17.)

On July 30, 2025, Plaintiffs Wu and Feng filed the instant second motion for default judgment against four defendants, (i) three corporate defendants (C.H. Supermarket, Inc., L.X.W.H.C. Supermarket Inc., and CL Supermarket Inc.); and (ii) one individual defendant, Xiao-Cheng Lin.  (ECF No. 129.)  Defendants were served

9

with the second motion for default judgment, (ECF No. 131), but did not oppose.

## LEGAL STANDARDS

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder*, 647 F.3d 497, 504 (2d Cir. 2011). "The first step is to obtain an entry of default." *Id.* "The next step requires the plaintiff to seek a judgment by default under Rule 55(b)." *Id.* Rule 55(b)(2) "requires a party seeking a judgment by default to apply to the court for entry of a default judgment." *Id.* at 505. "A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules," including the Federal Rules and Local Civil Rules. *Kim v. Kini LIC Corp.*, 806 F. Supp. 3d 277, 300 (E.D.N.Y. 2025) (quotations omitted).

In analyzing whether default judgment is appropriate, courts determine the following: "(1) jurisdictional requirements are satisfied; (2) the plaintiff took all the required procedural steps in moving for default judgment; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020) (citation modified).

## DISCUSSION

### I.    Jurisdiction and Venue

Given that Plaintiffs' FLSA claims arise from federal statutes and Plaintiffs allege Article III injuries-in-fact (i.e. underpayment and retaliation), the Court has subject matter jurisdiction over Plaintiffs' federal claims (Claims One, Two, and Eight).  28 U.S.C. § 1331.  The Court has personal jurisdiction over Defendants because they employed Plaintiffs at a supermarket they own and operate a supermarket in New York state.  *See Rodriguez v. MRC Bakery Corp.*, 802 F. Supp. 3d 393, 416 (E.D.N.Y. 2025) ("New York courts may exercise jurisdiction over corporations formed under its laws and operating within the state.") Venue is also proper because Defendants' supermarket in this district is where the alleged employment law violations occurred. *See* 28 U.S.C. § 1391(b)(1)-(2).

The Court does not, however, have subject matter jurisdiction over all of Plaintiffs' NYLL claims.  "While the [Supreme] Court has recognized that federal-question jurisdiction over a claim may authorize a federal court to exercise jurisdiction over state-law claims that may be viewed as part of the same case, it has never applied that rationale to permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing."  *Guthrie v. Rainbow Fencing Inc.*, 113

F.4th 300, 304 (2d Cir. 2024) (citation modified).  Claims Six and Seven relate to Defendants' alleged failure to comply with the NYLL wage notice and wage statement provisions under NYLL § 195(1) and (3), but "the statutory damage remedies in NYLL § 195(1) and (3) do not support standing in federal court."  *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518, at *1 (E.D.N.Y. Apr. 25, 2023); *accord Rodriguez*, 802 F. Supp. 3d at 414 (collecting cases).  Accordingly, Claims Six and Seven are DISMISSED for lack of standing.  Plaintiffs have plausibly alleged an Article III injury-in-fact as to their other NYLL claims (underpayment of wages and retaliation), and the Court therefore exercises supplemental jurisdiction over Claims Two, Four, Five, and Nine.

## II.  Procedural Requirements

Plaintiffs' first motion for default judgment, (*see* ECF Nos. 123-126), was denied without prejudice on procedural grounds for failure to comply with Local Civil Rule 55.2.[12]  Plaintiffs have remedied these procedural defects in their instant motion. *First*, Plaintiffs served the corporate defendants at their last known business address and the sole remaining individual defendant, Xiao-Cheng Lin, at his last known residential address.  (*See* ECF Nos. 131, 132.)  *Second*, Plaintiffs have complied with the

---

[12] The Court assumes familiarity with the Court's prior ruling denying without prejudice Plaintiffs' first motion for default judgment.  (ECF No. 127.)

procedural requirements of Local Civil Rule 55.2(a)(1), including compliance with the Servicemembers Civil Relief Act. *See* Local Civil Rules 55.2(a)(1)(A)-(C); (*see also* ECF No. 132-1.)]  In the instant second motion for default judgment, Plaintiffs have remedied the procedural defects of their first motion for default judgment.

**III. Liability as a Matter of Law**

Having found the jurisdictional and procedural requirements to enter default judgment satisfied, except as to the dismissed Claims Six and Seven, the Court proceeds to analyze whether Plaintiffs' factual allegations for their non-dismissed claims establish Defendants' liability as a matter of law.[13]  "[A]n employee's burden in this regard is not high" because the burden of recordkeeping is on the employer, and "an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362-63 (2d Cir. 2011) (citations omitted).  "[A]n employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference." *Id.* at 362 (citation modified).  As discussed below, Plaintiffs have adequately alleged liability for all non-dismissed FLSA and NYLL claims.

---

[13] The Court bifurcates its analysis of liability and damages, which are analyzed in the next section.

*First*, Plaintiffs adequately alleged Defendants' liability on both Claim One (federal minimum wage violation) and Claim Two (state minimum wage violation). Specifically, Plaintiff Feng alleges that he was paid below the federal minimum wage from March 2012 to May 2015, (ECF No. 125-6 at 3-5), and below the state minimum wage during the entirety of his employment period from March 2012 to April 2018, (*id*. at 3-7). Plaintiff Wu alleges that he was paid below the state minimum wage only in January 2018. (*Id*. at 2.)

*Second*, Plaintiffs adequately alleged Defendants' liability on both Claim Three (overtime pay under the FLSA) and Claim Four (overtime pay under the NYLL) because Plaintiffs allege that they worked in excess of 40 hours per week throughout their term of employment and were denied overtime pay for overtime work. (*See* ECF No. 125-6.) Specifically, Plaintiff Wu worked 66 hours per week throughout his term of employment, (*id*. at 1-2), and Plaintiff Feng worked 52 to 66.5 hours per week, (*id*. at 3-7).

*Third*, Plaintiffs adequately alleged Defendants' liability on Claim Five (spread of hours pay under the NYLL) because they allege that their workdays exceeded ten hours. *See Rodriguez*, 802 F. Supp. 3d at 426 ("Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours." (citing 12 N.Y.C.R.R. § 142-2.4)).

*Fourth*, Plaintiff Wu adequately alleged Defendants' liability on Claim Eight (retaliation under the FLSA) and Claim Nine (retaliation under the NYLL). Plaintiff Wu alleges that, after he commenced this action on February 1, 2018, "[o]n or before February 14, 2018 Defendants published a group chat message on a Chinese language instant messenger app[] WeChat to numerous Chinese supermarket vendors, owners and business insiders regarding Plaintiff Wu's claims against Defendants" and "stated ... that employers should take notice and reconsider or revoke any offer of employment to Plaintiff Chao Rong Wu because Plaintiff Wu has filed claims against the Defendants." (TAC ¶¶ 72-73.) Plaintiff Wu alleges that "[he] was offered employment as a meat department supervisor for a newly opened supermarket in Flushing, NY but this offer was rescinded when the owner of this newly established supermarket saw or heard about the Defendants' published notice regarding Plaintiff Wu's claim." (TAC ¶ 74.)

Plaintiff's factual allegations are sufficient to establish a reasonable inference that Defendants' alleged conduct was retaliatory under the FLSA and NYLL. As the Second Circuit has recognized, employer "action deleterious to the plaintiff's ... future employment" can qualify as an "adverse employment action" in retaliation for "protected activity" such as filing a

lawsuit.[14]  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019); *see also Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (holding that an employment action is retaliatory "if it well might have dissuaded a reasonable worker from making or supporting similar charges" (citation modified)). Here, Plaintiff Wu has adequately alleged that Defendants' publication to other supermarket owners in a private group chat about Plaintiff Wu's lawsuit and advising them to revoke any employment offers, resulting in a rescission of Plaintiff Wu's job offer at another supermarket, was "deleterious to the plaintiff's ... future employment." *Davis-Garett*, 921 F.3d at 43.

In sum, Plaintiffs have adequately alleged Defendants' liability on all non-dismissed claims, including minimum wage violations of the FLSA (Claim One) and NYLL (Claim Two); overtime pay violations of the FLSA (Claim Three) and NYLL (Claim Four); spread of hours pay under the NYLL (Claim Five); and retaliation under the FLSA (Claim Eight) and NYLL (Claim Nine).

## IV.  Damages

The Court proceeds to the calculation of damages for each of the surviving claims for Plaintiff Wu and Plaintiff Feng, respectively.  In doing so, the Court is mindful that "[a]

---

[14] "Because the FLSA and NYLL retaliation provisions are nearly identical, claims under both statutes are analyzed using the same framework." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-cv-2180 (AMD)(PK), 2022 WL 1018791, at *9 (E.D.N.Y. Mar. 16, 2022) (citation modified), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

16

plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20 (2d Cir. 2002) (summary order).  "[T]he plaintiff needs merely to offer an *estimate* of damages that is satisfactory as a matter of reasonable inference."  *Id.* at 21 (emphasis added).

### A.    Plaintiff Wu

Below, the Court calculates Plaintiff Wu's damages for the three relevant employment periods.  In its calculations, the Court applies well-settled principles regarding spread-of-hours pay,[15] liquidated damages,[16] double recovery,[17] and pre-judgment interest.[18]  In total, Plaintiff Wu is entitled to $29,881.36 in damages and $16,734.81 in pre-judgment interest.  Plaintiff Wu's total judgment amount is $46,616.17.  The Court explains its damages calculations in the following tables:

---

[15] "Only employees who make minimum wage or less" and work "more than ten hours" per workday "are eligible for spread-of-hours pay." *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 249 (E.D.N.Y. 2024).

[16] "The NYLL ... permits employees to recover an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due, unless the employer provides a good faith basis to believe that its underpayment of wages was in compliance with the law." *Rodriguez*, 802 F. Supp. 3d at 430 (citation modified).

[17] "A plaintiff may not recover 'duplicative' liquidated damages (*i.e.*, under both the FLSA and NYLL) for the same course of conduct." *Rodriguez*, 802 F. Supp. 3d at 430 (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

[18] "[C]ourts award pre-judgment interest only on the compensatory damages award and not on the liquidated damages award." *Rodriguez*, 802 F. Supp. 3d at 434 (citation omitted).  "Courts calculate pre-judgment interest on a NYLL award at a rate of 9% per year." *Id.* (citing N.Y. C.P.L.R. § 5004).  "Courts have discretion to determine a reasonable date from which to award pre-judgment interest, and the median date between the earliest and latest that the plaintiff's NYLL claim accrued is considered a reasonable single intermediate date." *Id.* (citations omitted).

**Plaintiff Wu**

|  | Period I | Period II | Period III |
|---|---|---|---|
|  | 2/1/2016 - 12/11/2016 | 2/13/ 2017 - 12/30/2017 | 12/31/2017 - 1/14/2018 |
| Hours worked (per week) | 66 | 66 | 66 |
| Overtime hours worked (per week) | 26 | 26 | 26 |
| Days worked (per week) | 6 | 6 | 6 |
| Hours worked per day | 11 | 11 | 11 |
| Eligible for spread of hours pay? | No | No | Yes |
| Weeks worked during period | 45 | 46 | 2 |
| Weekly pay | $800.00 | $800.00 | $800.00 |
| Hourly rate paid | $12.12 | $12.12 | $12.12 |
| Minimum wage rate | $9.00 | $11.00 | $13.00 |
| Overtime rate | $18.18 | $18.18 | $19.50 |

| | Period I | Period II | Period III |
|---|---|---|---|
| Unpaid minimum wage and overtime | $7,086.60 | $7,244.08 | $454.00 |
| Unpaid spread of hours | $0.00 | $0.00 | $156.00 |
| Subtotal: Non-liquidated damages | $7,086.60 | $7,244.08 | $610.00 |
| Liquidated damages | $7,086.60 | $7,244.08 | $610.00 |
| Total damages | $14,173.20 | $14,488.16 | $1,220.00 |
| **Grand total of damages** | **$29,881.36** | | |
| Pre-judgment interest rate | 9.00% | | |
| Total non-liquidated damages subject to pre-judgment interest | $14,940.68 | | |
| Per diem interest | $5.03 | | |
| Approximate midpoint date of employment term | 1/23/2017 | | |
| Judgment date | 3/4/2026 | | |
| Approximate number of days of interest | 3327 | | |
| **Total pre-judgment interest** | **$16,734.81** | | |
| **Total judgment amount** | **$46,616.17** | | |

18

## B.    Plaintiff Feng

As calculated below, Plaintiff Feng is entitled to $120,823.82 in damages and $59,554.56 in pre-judgment interest. Plaintiff Wu's total judgment amount is $180,378.38.

### Plaintiff Feng

|  | Period I | Period II | Period III | Period IV | Period V | Period VI | Period VII | Period VIII |
|---|---|---|---|---|---|---|---|---|
|  | 3/1/2012 - 12/20/2012 | 1/1/2013 - 12/31/2013 | 1/1/2014 - 12/31/2014 | 1/1/2015 - 5/30/2015 | 6/1/2015 - 12/31/2015 | 1/1/2016 - 12/31/2016 | 1/1/2017 - 12/31/2017 | 1/1/2018 - 4/15/2018 |
| Hours worked (per week) | 54.5 | 66.5 | 66.5 | 66.5 | 60 | 60 | 60 | 52 |
| Overtime hours worked (per week) | 14.5 | 26.5 | 26.5 | 26.5 | 20 | 20 | 20 | 12 |
| Days worked (per week) | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| Hours worked per day | 9.1 | 11.1 | 11.1 | 11.1 | 10.0 | 10.0 | 10.0 | 8.7 |
| Eligible for spread of hours pay? | No | Yes | Yes | Yes | No | No | No | No |
| Weeks worked during period | 42 | 52 | 52 | 21 | 30.5 | 52 | 52 | 15 |
| Weekly pay | $230 | $435 | $435 | $435 | $540 | $540 | $540 | $588 |
| Hourly rate paid | $4 | $7 | $7 | $7 | $9 | $9 | $9 | $11 |
| Minimum wage rate | $7 | $7 | $8 | $9 | $9 | $9 | $11 | $13 |
| Overtime rate | $11 | $11 | $12 | $13 | $14 | $14 | $17 | $20 |
|  |  |  |  |  |  |  |  |  |
| Unpaid minimum wage and overtime | $9,146 | $7,453 | $10,556 | $5,522 | $2,745 | $4,680 | $11,960 | $2,490 |
| Unpaid spread of hours | $0 | $2,262 | $2,496 | $1,103 | $0 | $0 | $0 | $0 |
| Subtotal: Non-liquidated damages | $9,146 | $9,715 | $13,052 | $6,624 | $2,745 | $4,680 | $11,960 | $2,490 |
| Liquidated damages | $9,146 | $9,715 | $13,052 | $6,624 | $2,745 | $4,680 | $11,960 | $2,490 |
| Total damages | $18,292 | $19,429 | $26,104 | $13,249 | $5,490 | $9,360 | $23,920 | $4,980 |
| **Grand total of damages** | **$120,823.82** | | | | | | | |
| Pre-judgment interest rate | 9.00% | | | | | | | |
| Total non-liquidated damages subject to pre-judgment interest | $60,411.91 | | | | | | | |
| Per diem interest | $14.90 | | | | | | | |
| Approximate midpoint date of employment term | 3/24/2015 | | | | | | | |
| Judgment date | 3/4/2026 | | | | | | | |
| Approximate number of days of interest | 3998 | | | | | | | |
| **Total pre-judgment interest** | **$59,554.56** | | | | | | | |
| **Total judgment amount** | **$180,378.38** | | | | | | | |

## V.    Attorney's Fees and Costs

The Supreme Court has instructed that, in the interest of judicial economy, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[The] trial court has wide discretion," and "the determination of fees should not result in a second major litigation." *Id*. at 838-39 (internal quotations omitted); *see also Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (noting district courts' discretion in awarding fees). Upon careful review of the itemized fees and costs provided by Plaintiffs' counsel, including contemporaneous time records, (*see* ECF Nos. 129-9, 129-10), the Court finds that only a minor adjustment in fees is warranted.

*First*, the total hours Plaintiffs' legal team, including lawyers and support staff, expended on this action (which has spanned over eight years) totals 226.30 hours, or approximately 28 hours per year. (ECF No. 129-9 at 26.) The hours Plaintiffs' legal team spent litigating this action, especially in light of the egregious litigation conduct by certain defendants,[19] were reasonable.

---

[19] The Court's July 22, 2025 Order noted some of the egregious litigation conduct by certain defendants, including their decision to appear but later abandon participation in the action. Further, "two of the three defense attorneys in this case, Messrs. Zou and Montgomery, caused considerable confusion by initially entering an appearance on behalf of all named defendants and later stating that they never had contact with a subset of the defendants – that is, individuals and corporations they purportedly represented." (ECF No. 127 at 10.)

*Second*, the billing rates Plaintiffs' legal team charged warrant a relatively modest 10% reduction due to a lack of careful compliance with the Court's procedural rules and an overall lack of diligence at certain points in the litigation. *See Millea*, 658 F.3d at 168 ("[C]onsiderations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." (internal quotations omitted)). For example, Plaintiffs' counsel failed to correctly and diligently pursue default judgment and filed its first motion for default judgment incorrectly, necessitating a lengthy court decision denying the motion and the filing of the instant second motion for default judgment. (*See* ECF No. 127 at 2-4.) Plaintiffs' counsel also failed to diligently prosecute Plaintiffs' claims against all defendants; for example, as of July 2025, "[a]fter over seven years of litigation," Plaintiff's counsel had still failed to "identify the full legal names of ... two individual[] [defendants], their residential addresses, or apparently any contact details whatsoever." (ECF No. 127 at 4.)

*Third*, the costs submitted by Plaintiff's counsel, totaling $2,436.22, are reasonable and consist of expected costs such as filing fees, postage, mediation fees, and deposition costs. (ECF Nos. 129-9 at 26, 129-10.)

In sum, Plaintiff's counsel is entitled to a fee award of $60,398.95 and a cost award of $2,436.22, totaling $62,835.17.

21

## <u>CONCLUSION</u>

For the reasons discussed in this Memorandum and Order, Plaintiffs' second motion for default judgment, (ECF No. 129), is GRANTED as to Claims One, Two, Three, Four, Five, Eight, and Nine. Claims Six and Seven are DISMISSED for lack of standing.

The Clerk is respectfully directed to close this case and:

1. Enter judgment in favor of Plaintiff Wu against defendants C.H. Supermarket, Inc., L.X.W.H.C. Supermarket Inc., CL Supermarket Inc., and Xiao-Cheng Lin who are all jointly and severally liable in the amount of $46,616.17;

2. Enter judgment in favor of Plaintiff Feng against defendants C.H. Supermarket, Inc., L.X.W.H.C. Supermarket Inc., CL Supermarket Inc., and Xiao-Cheng Lin who are all jointly and severally liable in the amount of $180,378.38;

3. Enter judgment for Plaintiffs' attorney's fees and costs against defendants C.H. Supermarket, Inc., L.X.W.H.C. Supermarket Inc., CL Supermarket Inc., and Xiao-Cheng Lin who are all jointly and severally liable in the amount of $62,835.17.

Plaintiffs shall serve defendants C.H. Supermarket, Inc., L.X.W.H.C. Supermarket Inc., CL Supermarket Inc., and Xiao-Cheng Lin with a copy of this Memorandum and Order and note service on the docket by March 6, 2026.

**So ordered.**

Dated:       March 4, 2026
             Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

23